UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
"IN ADMIRALTY"

CASE NO. 12-81209-CIV-MARRA

ST. MICHAEL PRESS PUBLISHING CO., INC.,

    Plaintiff,
vs.

ONE UNKNOWN WRECK BELIEVED TO BE
AN UNIDENTIFIED MILITARY AND SALVAGE
FRIGATE OF THE VESSEL IF MARAVILLA, its
apparel, tackle, appurtenances and cargo
bounded by coordinates, starting at a point
latitude 27 degrees, 00 minutes, 00 seconds,
longitude 80 degrees, 05 minutes, 00 seconds,
going to a point north to longitude 80 degrees,
05 minutes, 00 seconds, latitude 27 degrees,
02 minutes, 00 seconds, then proceed going east
in a straight line to longitude 80 degrees,
01 minutes, 00 seconds, latitude 27 degrees,
02 minutes, 00 seconds, then proceed due south in
a straight line to latitude 27 degrees, 00 minutes,
00 seconds, longitude 80 degrees, 01 minutes,
00 seconds, then proceed west to the starting point.

    Defendant.
_____/

OPINION AND ORDER

This cause is before the Court upon Plaintiff's Motion for Default Judgment and Final Judgment (DE 15), and the State of Florida's Motion for Relief from Default and to Dismiss (DE 21). The motions are briefed and ripe for review. The Court has reviewed the briefs and the record, and is otherwise fully advised in the premises.

I.    BACKGROUND

On October 31, 2012, Plaintiff St. Michael Publishing Co., Inc., ("Plaintiff") filed a verified complaint asking the Court to award it exclusive title to an unidentified shipwreck ("the

*res*") located off the coast of Palm Beach County in U.S. territorial waters. (DE 1, ¶¶ 7, 28). According to the complaint, Plaintiff, a Florida corporation engaged in marina salvage activity, has extensively surveyed the area where the *res* is located, and has recovered at least one artifact. Id. at ¶¶ 2-4.  Plaintiff believes the *res* is a Spanish military frigate wrecked more than 200 years ago. Id. at 1; Id. ¶ 10.  Invoking the Court's admiralty jurisdiction, Plaintiff asserts a claim under the law of salvage based on its rescue of the wreck and artifacts, together with a claim for injunctive relief to prohibit any rival salvors from conducting salvage operations within the area. Id. ¶¶ 29-38.[1]

On November 7, 2012 the Court issued a warrant for arrest *in rem* (DE 10) and appointed Plaintiff as substitute custodian of the *res* (DE 9).  On December 21, 2012, Plaintiff published notice of this case in the Palm Beach Daily Business Review. (DE 13-1).  Plaintiff subsequently sent copies of the complaint by certified mail to the State of Florida and counsel for the Kingdom of Spain. (DE 14).  On January 4, 2013 Plaintiff filed the return receipts with the Court (DE 14-1).

On January 30, 2013, Plaintiff moved for default judgment (DE 15).   On February 26, 2013, at Plaintiff's request, a clerk's default was entered (DE 18).  On February 27, 2013, the Court held a hearing on the then-pending matters.  On March 25, 2013 Plaintiff filed Notice of Compliance with this Court's Request for Information Given in Court on February 27, 2013 (DE 20) regarding service on Florida and counsel for Spain.  On May 8, 2013, Florida specially appeared, requested relief from the default, and moved the Court to dismiss the action. (DE 21).

---

[1] The Complaint also asserted a claim for exclusive title under the Law of Finds (DE 1, ¶38), but Plaintiff has since abandoned this alternative claim (DE 22, ¶ 18).

2

II.     DISCUSSION

In this case there is a question as to the existence of the *res* as described, as well as competing claims of ownership. According to Florida, the only possible owners of the vessel are: (1) the Government of Spain as the original owner that claims to not have abandoned the vessel, or (2) Florida under the Abandoned Shipwreck Act of 1987, 43 U.S.C. §§ 2101-2106, if the alleged vessel has been abandoned. (DE 21 ¶ 3). In either event, Florida asserts that neither possible owner has given permission for salvage. Id. Florida specially appeared "to assert its Eleventh Amendment immunity and move to dismiss this action for failure to state a claim and for failure to properly serve the State." (DE 21 at 3).

Plaintiff continues to maintain that the *res* belongs to Spain and is not abandoned, as evidenced by its correspondence with Spain. (DE 20-1.) Plaintiff simultaneously maintains that it is entitled to a salvage award, even though the same correspondence with Spain expressly refuses any salvage by Plaintiff. Against the backdrop of competing claims and interests, the Court turns to the pending motions.

A.   Florida's Motion to Vacate Clerk's Default

The Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The Court is vested with considerable discretion in deciding whether to vacate a default. Robinson v. U.S., 724 F.2d 735, 739 (11th Cir. 1984). Moreover, defaults are disfavored based on the strong policy in favor of determining cases on their merits. Florida Physicians Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993). Thus, to obtain relief under Rule 55(c), a movant must only make a "bare minimum showing" in support of its claim for relief. Jones v. Harrell, 858 F.2d 667, 669 (11th Cir. 1988).

To determine if "good cause" exists, courts consider factors such as whether (1) the default was culpable or willful, (2) setting aside the default would cause prejudice, (3) the

defaulting party presents a meritorious defense, and (4) the defaulting party acted promptly to correct the default. Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996).  These factors are only guidelines; they are not "talismanic." Id.

Here, the circumstances weigh in favor of vacatur.  The Court cannot conclude that Florida willfully or intentionally ignored this action. To the contrary, Florida was entitled to withhold an answer until it had been served, see Ehorn v. Sunken Vessel Known as the "ROSINCO", 294 F.3d 856, 859 (7th Cir. 2002)("even in an *in rem* proceeding, personal service may be essential," holding that publishing or posting of notice to serve a state in a case involving claims to a sunken vessel is inadequate to justify entry of a default).   Here, Plaintiff has failed to comply with the appropriate rules for service on the State of Florida.

Rule 4(j) of the Federal Rules of Civil Procedure governs service of process on the State. The Rule states in pertinent part that service on the State shall be effected by "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by the state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j).

Plaintiff asserted in its Notice of Compliance (DE 20) that the state of Florida had been served in accordance with Florida Statute § 48.121, "wherein two copies of the Complaint were provided by certified mail to the Attorney General of the State." (DE 20 ¶ 1).  That statute provides,

> [w]hen the state has consented to be sued, process against the state shall be served on the state attorney or an assistant state attorney for the judicial circuit within which the action is brought and by sending two copies of the process by registered or certified mail to the Attorney General. The state may serve motions or pleadings within 40 days after service is made. This section is not intended to authorize the joinder of the Attorney General or a state attorney as a party in such suit or prosecution.

To date, Plaintiff has not complied with this statute because there is no indication in the record that the state attorney for the appropriate judicial circuit has been served. Therefore, Plaintiff has not fully complied with the requirements for service on Florida. Hence, Florida's time to file an answer has not yet started to run.

Additional factors weigh in favor of vacatur. Plaintiff has articulated no material prejudice it would suffer by allowing this case to go forward, and the Court finds no evidence to suggest any exists. Lastly, Florida has provided "a hint of a suggestion" that its asserted claims have merit. Brown Bark III, L.P. v. Cofresi Torres, 2010 WL 10363, *4 (S.D. Fla. 2010). The Court need not decide if this argument will succeed; rather the Court's review at this juncture is limited to determining if Florida's allegations are entirely devoid of merit. Id. Finding they are not, this factor weighs in favor of vacatur. In view of the foregoing, the Court finds good cause to vacate the clerk's default.

### B. The State of Florida's Motion to Dismiss

For the reasons stated above, the court finds that service on the State of Florida was improper. The Court therefore **GRANTS** Florida's Motion to Dismiss (DE 21) **in part** on the grounds of improper service and **DENIES in part without prejudice** the State of Florida's remaining arguments.

### C. Plaintiff's Motion for Default Judgment

Because the clerk's default in this matter shall be set aside, Plaintiff's motion for default judgment (DE 15) is **DENIED AS MOOT**.

### III. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the State of Florida's Motion to Vacate Clerk's Default and Dismiss (DE 21) is **GRANTED IN PART** as to improper service

and **DENIED IN PART without prejudice** as to Florida's remaining claims. Plaintiff must complete its attempt to serve the State of Florida pursuant to Section 48.121of the Florida Statutes.  Florida may renew its arguments relative to dismissal in another motion after being properly served. For good cause shown, the Clerk's Default (DE 18) is **VACATED.**  The State of Florida's Motion to Dismiss Plaintiff's Motion for Default Judgment (DE 15) is accordingly **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida this 25th day of September, 2013.

KENNETH A. MARRA
United States District Judge